# Dziak et al. *v.* Swaney, Appellant.

*Negligence—Damages—Excessive verdicts—New trial—Discretion of court—Abuse—Appeals.*

1. The appellate court will not interfere with the trial court's action in not granting a new trial because of the alleged excessive amount of the verdict, unless it was so grossly excessive as to shock the court's sense of justice, and evidences a clear abuse of discretion on the part of the court below in refusing to set the verdict aside.

2. A new trial will not be granted because of an alleged excessive verdict, where it cannot be said that the jurors were so palpably regardless of their duty and the sanctity of their oaths that they permitted their verdict to be rendered in obedience to their prejudices or their sympathies.

3. A verdict of $20,000 for a boy twelve years old will not be set aside as excessive, where it appears that, as the result of contact with an electric wire, the loss of the use of one of his arms for industrial labor was total, that as he grew to adult size he will be greatly deformed, that at the time of the trial he was suffering necrosis of the bones which might develop into gangrene; that he had suffered excessive pain, and would continue to suffer pain in the future, and that future operations will be necessary and expensive.

4. A verdict of $3,000 for the parents of the boy was held, under the circumstances of the case, not excessive.

5. Where it is shown that a healthy and strong boy twelve years old was earning out of school hours six dollars a week at the time he was injured, the parents are entitled to have considered such earnings in determining a verdict in their favor.

6. In such case the parents' loss is not limited merely to the period between the boy's sixteenth and twenty-first years, during which time he would not be required to go to school.

Argued March 18, 1927. Before Moschzisker, C. J., Frazer, Walling, Kephart, Sadler and Schaffer, JJ.

Appeals, Nos. 77 and 78, March T., 1926, by defendant, from judgments of C. P. Washington Co., Feb. T., 1926, No. 115, on verdict for plaintiffs, in case of Thomas Dziak, Sr., Mary Dziak, his wife and Thomas Dziak, Jr. v. Ewing B. Swaney. Affirmed.

Trespass for personal injuries to a boy twelve years old. Before Cummins, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for Thomas Dziak, Sr., and Mary Dziak, his wife for $3,000 and for Thomas Dziak, Jr., for $20,000. Motion for new trial on the ground of excessive verdict refused. Defendant appealed.

*Error assigned* was, inter alia, in each appeal, order refusing new trial, quoting record.

*Isaac W. Baum,* for appellant.—The verdict for the parents was excessive: Tietz v. Traction Co., 169 Pa. 516.

The verdict for the boy was excessive: Gail v. Phila., 273 Pa. 275; Goodhart v. R. R., 177 Pa. 1; Tietz v. Traction Co., 169 Pa. 516; Kerrigan v. R. R., 194 Pa. 98; Potts v. Guthrie, 282 Pa. 200; Martin v. Letter, 282 Pa. 286; Goldman v. Mitchell Fletcher Co., 285 Pa. 116.

*Robert E. Burnside,* with him *Ethel Burnside,* for appellees.—The verdict for the parents was proper: Rankin v. Ward Baking Co., 272 Pa. 108; McMonagle v. Simpers, 267 Pa. 117.

The verdict for the boy was not excessive: Goldman v. Mitchell Fletcher Co., 285 Pa. 116; McIntyre v. Cab Co., 283 Pa. 395; Morris v. Zinn, 286 Pa. 28; Martin v. Letter, 282 Pa. 286; Potts v. Guthrie, 282 Pa. 200; Stevenson v. Davis, 272 Pa. 362; Hitz v. Ry., 245 Pa. 7; Dunlap v. Ry., 247 Pa. 230; O'Hanlon v. Rys., 256 Pa. 394; Hertzberg v. Taxicab Co., 243 Pa. 540; Rankin v. Baking Co., 272 Pa. 108; McMonagle v. Simpers, 267 Pa. 117; Willenpart v. Elevator Co., 269 Pa. 131; DeHaas v. R. R., 261 Pa. 499; Sebring v. Telephone Co., 275 Pa. 131; Scott v. Express Co., 257 Pa. 25; Murtland v. English, 214 Pa. 325; Stauffer v. Reading, 208 Pa. 436; Neff v. R. R., 202 Pa. 371; Schenkel v. Traction Co., 194 Pa. 182; Chestnut v. Auto Car Co., 53 Pa. Superior Ct. 1.

OPINION BY MR. JUSTICE SCHAFFER, April 11, 1927:

The minor plaintiff and his father and mother, recovered verdicts against defendant in the court below resulting from personal injuries negligently inflicted upon the boy, he for $20,000 and the parents for $3,000. The appeals from the judgments entered thereon raise but a single question, the alleged excessivness of the verdicts.

We will take up the finding in the boy's favor first, as a review of it will cover most of the factors to be dealt with in considering the parents' recovery.

It will not be necessary to develop the circumstances connected with the accident any further than to show how it happened, as appellant's negligence is not denied. Defendant by his employees was transporting a large steam shovel loaded on a trailer along a public highway. In so doing a portion of the shovel came in contact with a guy wire running across the highway which was struck with such force that it broke off and pulled down two heavy poles of an electric power company, one of which supported a high tension electric wire carrying 6,900 volts of electricity. The plaintiff, Thomas Dziak, Jr., at the time eleven years and ten months of age,

was in a field adjoining the highway, and, in attempting to escape from the falling pole, he touched with his shoulder a cable guard rail between the field and the road just at the instant that the high tension line fell on the guard rail, causing him to become transfixed to the wire for a period of about half an hour, the 6,900 volts of electricity passing through his body, with smoke from his burning flesh curling from his shoulder and feet. Those who witnessed the accident were afraid to attempt relief of the lad because of the danger to themselves and it was impossible to disengage him from contact with the electric current until it could be shut off at a place a considerable distance from the scene of the accident.

We will allow the injuries to the boy to be described in the language of the trial judge in his opinion dismissing the motion for a new trial: "The boy's verdict could not be said to be ordinary, nor are his injuries. Not only his right arm, but his shoulder and a portion of the trunk of his body is affected, as well as his feet and hands. His injuries are admittedly of a most serious nature. The end of his collar bone is burned off and destroyed; the upper portion of the large bone in the upper arm is burned off and destroyed; a part of it, at least, is dead, and from an examination of the x-ray showing both arms, it would appear that there has been no growth in any part of this large bone since the injury, this bone being clearly smaller than the same bone in the left arm; from this part of the arm portions of the bone have recently sloughed off and come out through the flesh; the muscles and ligaments on the top of the shoulder have been burned off and destroyed, so that there can be no further development here, which, as the remainder of the boy's body develops normally, will result in a considerable deformity; the only thing remaining on the top of the shoulder to hold the boy's injured arm in place is the skin and scar tissue; owing to the end of the controlling muscle having been destroyed, the boy cannot raise his injured arm; he, however, can

use it sideways, but by reason of the ragged condition of the bone, this results in considerable pain; movement in the elbow and wrist are normal. The loss of the use of this arm for industrial labor, according to the testimony, is total. The electricity passed from the boy's feet by the nails in his shoes, causing a number of deep burns, which render his feet quite tender. His hands were also burned. The effect of these burns will gradually become less."

In addition to this summary by the court below of the boy's injuries, our examination of the record discloses these further matters which would seem to be proper to be taken into account in measuring the size of the verdict awarded him. His right shoulder has atrophied and its growth has ceased. As he approaches adult age and his left shoulder grows to adult size, he will be greatly deformed. This deformity will be added to because the large area of scar tissue on top of the shoulder will draw his head and neck to one side and he will have the appearance of being lopsided, bigger on one side than the other. He has suffered most severe pain and will continue to suffer pain in the future. He now has necrosis of the bones of his shoulder and may develop gangrene. Future operations will be necessary and will be expensive. To use his arm for any purpose causes him pain.

The trial judge thus summed up his conclusions as to the size of the boy's verdict: "Considering the extent and permanency of the boy's injuries, his pain and suffering, past and future, his inconvenience, disability, disfigurement and deformity naturally resulting therefrom, both past and future, as well as his probable future loss resulting from his diminution in earning power, from his majority until he ceases to have earning power,—considering all of these, we do not feel that, substituting our judgment for that of the jury (if we were allowed to do this), we can in good conscience say that the verdicts rendered are unjust or excessive, or that they are the

product of sympathy, prejudice, mistake, or the result of any other improper functioning of that body...... If loss of earning power was alone to be considered, then we believe this verdict would be too large, but considering all of the other elements involved, it would not appear to be excessive." To which we may add, the elements of pain and suffering in this case and of deformity are far out of the ordinary and of graver character than in almost any other case presented to us.

As to the finding for the parents, these considerations are of moment: At the time he was injured the boy was earning $6 per week as a caddy, when he worked. Appellant's counsel argues that the loss of the parents should be calculated so far as the boy's earnings are concerned for only the time when he is between sixteen and twenty-one years of age, as he would be required to go to school until the earlier age. It was shown that prior to the accident he was a particularly strong, large and vigorous boy and therefore it is likely he could earn quite considerable amounts in the four years intervening before he becomes sixteen years old. Whatever the estimated loss would be during that period the parents are entitled to recover it. They already have spent $647.50 for doctors' bills and have made other outlays in connection with their son's injuries and the opinion of the surgeons is that he should undergo several other operations of a serious kind. Taking them into account, the expenditures already made, the loss of such sums as he could have earned until he is sixteen years old as indicated by what he has already earned and the income which he could bring in during the five years between sixteen and twenty-one, when under present day conditions the earnings of a large, strong boy between these ages may be almost those of a man, we cannot say the verdict for the parents is out of reason and excessive. Account must be taken of the fact too that as a consequence of his injuries the boy is unable to do anything requiring bodily effort. Unless his parents give him

some special training to enable him to follow a mental occupation making the expenditures which this will require, he will apparently be practically helpless. The father is a coal miner with several other children and not financially able to educate his injured son. At the time of the trial although over twelve years old, he had to be dressed and bathed by his parents and the evidence indicates that he will continue to be an object of great care and attention.

We think from our review of the record before us that while the verdicts are large, in the case of the minor approaching the verge of excessiveness, it could not be said that the jurors were "so palpably regardless of their duty and the sanctity of their oaths that they permitted their verdict to be rendered in obedience to their prejudices or their sympathies" (Holden v. Penna. R. R. Co., 169 Pa. 1, 17; Gail v. Phila., 273 Pa. 275); or that they are "so plainly excessive" (Goldman v. Mitchell Fletcher Co., 285 Pa. 116) as to cause us to interfere or "as to shock our sense of justice, and evidence a clear abuse of discretion on the part of the court below in refusing to set [them] aside": McIntyre v. Quaker City Cab Co., 283 Pa. 395, 396.

The assignments of error are overruled and the judgments affirmed.